UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONNA CISNEROS,

    Plaintiff,

vs.    Case No. 12-13285

WAL-MART STORES EAST, L.P.,    HON. AVERN COHN

    Defendant.

_____/

**MEMORANDUM AND ORDER DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 19)**

### I. Introduction

This is a premises liability tort case. Plaintiff Donna Cisneros (Cisneros) is suing defendant Wal-Mart Stores East, L.P. (Wal-Mart) for injuries she allegedly sustained after she slipped and fell on black ice in a Wal-Mart parking lot. Before the Court is Wal-Mart's motion for summary judgment. Wal-Mart says it is not liable for Cisneros' alleged injuries because even if black ice existed in the parking lot and even if Wal-Mart had constructive notice of the condition, the black ice was an open and obvious condition. For the reasons that follow, the motion will be denied.

### II. Background

On the evening of January 28, 2012, Cisneros drove in her father's pickup truck to the Wal-Mart store in White Lake, Michigan to purchase Ensure for her father. Cisneros lives with her mother in a mobile home park next to the Wal-Mart store, and while traveling from her home to Wal-Mart, she did not have any problems walking or recall seeing snow or ice on the ground.

On January 28, 2012, the temperature was a high of 35 degrees and a low of 26 degrees, there was trace amounts of snow on the ground, and less than one inch of precipitation had fallen during the day.

Metrosweep Services, LLC (Metrosweep) was responsible for plowing and salting the Wal-Mart parking lot. The contract requires Metrosweep to apply salt after plowing and as needed when conditions are icy with less than an inch of snow. On the day of the incident, Metrosweep salted the parking lot between 6:45 a.m. and 7:45 a.m. Metrosweep also inspected the sidewalks at 2 p.m. that day and reported they were "ok," but did not inspect the parking lot after it had been salted that morning.

While Cisneros herself does not have a handicap sticker, her father does, so Cisneros parked the truck (illegally) in a handicap spot. Cisneros testified at deposition that it was "dark out" when she arrived at Wal-Mart and that she did not see any snow or ice in the parking lot when she pulled into the lot. Cisneros described the pavement of the parking lot as looking "black" and "normal" and stated the parking lot was well-lit. As Cisneros exited the truck, she stepped from the step rail to the pavement and fell on the ground due to what she claims was "ice that wasn't salted in the parking lot." Cisneros testified that she felt wetness on her pants after her fall, and while she does not recall seeing or feeling ice on the ground, she believes ice caused her slip because "there wasn't a puddle of water" where she had fallen.

After her fall, Cisneros stood up and entered the Wal-Mart store to find a manager and report her incident. Cisneros informed Christina Cadwallader (Cadwallader), a customer service representative, that she slipped and fell in the parking lot. Cisneros also spoke with Lori Zinski (Zinksi), a Wal-Mart customer service

manager. Gordon Chitwood (Chitwood), the assistant manager on duty at the time, was notified of Cisneros' incident. While Zinski did not recall whether anyone had complained of any issues regarding the condition of the parking lot area that day, Chitwood and Cadwallader stated that no one had reported any complaints regarding the parking lot on January 28, 2012 prior to the incident with Cisneros. Both Zinksi and Cadwallader testified that if they had received a complaint about the condition of the parking lot, remedial steps would have been taken. Zinksi testified that if someone were to report ice in the parking lot, she would have inspected the area or sent someone else to inspect it. Similay, Cadwallader testified that if someone had informed customer service about a parking lot condition, she would have notified management of the issue. While Chitwood was not aware of any formal system where employees check the parking lot at set times throughout the day, he did say that the store's cart pushers would inform management if the parking lot needed salting.

    Cisneros filled out a customer statement describing her slip and fall. She then purchased her father's Ensure and returned home.

    Cisneros says she first sought medical attention for the injuries she says she sustained from the slip and fall within a week of the incident. Cisneros says she suffers from back pain, and later developed shooting pain down her left leg. To treat her alleged injuries, Cisneros has gone to two doctors, a pain management clinic, and physical therapy. Cisneros says she is limited to lifting only fifteen pounds at her doctor's request and that the longest she can sit without experiencing pain is ten minutes.

### III. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

> Revised Rule 56 expressly provides that:
>
> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support a fact.

Fed. R. Civ. P. 56(c)(1).

The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, id. at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party, Hager v. Pike Cnty. Bd. of Ed., 286 F.3d 366, 370 (6th Cir. 2002).

### IV.  Analysis

#### A.  Premises Liability in General and the Open and Obvious Doctrine[1]

Generally, a premises owner must exercise reasonable care to protect an invitee[2] from an unreasonable risk of harm caused by a dangerous condition on the premises. Hoffner v. Lanctoe, 492 Mich. 450, 460 (2012).  An unreasonable risk of harm is one "caused by a dangerous condition of the land that the landowner knows or should know the invitees will not discover, realize or protect themselves against."  Bertrand v. Alan

---

[1] In diversity cases, the Court applies the substantive law of Michigan, as the forum state, anticipating how the Michigan Supreme Court would rule in the case.  Berrington v. Wal-Mart Stores, Inc., 696 F.3d 604, 607–08 (6th Cir. 2012) (citations omitted).  If "the Michigan Supreme Court has not addressed the issue presented," the Court must "anticipate how [it] would rule in the case."  Id. (citing Allstate Ins. Co. v. Thrifty Rent–A–Car Sys. Inc., 249 F.3d 450, 454 (6th Cir. 2001)).

[2] For the purposes of the motion, the parties agree that Cisneros was a business invitee.

5

Ford, Inc., 449 Mich. 606, 609 (1995) (citing Williams v. Cunningham Drug Stores, Inc., 429 Mich. 495, 499 (1988)). This duty does not, however, extend to dangerous conditions that are open and obvious. Lugo v. Ameritech Corp., 464 Mich. 512, 516 (2001).[3] Indeed, "such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." Hoffner, 492 Mich. at 461.

An open and obvious condition is one that an average person of ordinary intelligence would be able to discover upon casual inspection. Kennedy v. Great Atlantic & Pacific Tea Co., 274 Mich. App. 710, 713 (2007). In other words, an open and obvious condition is one that is "so obvious that the invitee might reasonably be expected to discover [it]." Riddle v. McLouth Steel Prods. Corp., 440 Mich. 85, 96 (1992). Courts employ an objective standard, "calling for an examination of 'the objective nature of the condition of the premises at issue.'" Hoffner, 492 Mich. at 461.

Even if a condition is open and obvious, a premises powner must protect invitees from the risk of harm "if special aspects of a condition make even an open and obvious risk unreasonably dangerous." See Lugo, 464 Mich. at 517. The "special aspects" exception to the open and obvious doctrine is a narrow one. Hoffner, 492 Mich. at 462-63. "A special aspect exists when the danger, although open and obvious, is

---

[3]"Michigan's open and obvious doctrine was initially based on the Restatement of Torts," which provided that "a premises possessor is not liable for harm caused by known or obvious dangers 'unless the possessor should anticipate the harm despite such knowledge or obviousness.'" Bragan v. Symanzik, 263 Mich. 324, 331 (2004) (citing Restatement Torts, 2d, § 343A, p. 218). The Restatement approach, however, was replaced by the Michigan Supreme Court in Lugo.

unavoidable or imposes a 'uniquely high likelihood of harm or severity of harm.'" Bragan, 263 Mich. App. at 331-32; see also Hoffner 492 Mich. at 463.

If genuine issues of material fact exist as to the condition on the premises or whether a condition is open and obvious, a fact question exists to be determined by a jury. Bragan, 263 Mich. App. at 337 (Murphy, P.J., concurring).

### B. Application

#### 1. The Condition of the Premises/Causation

Cisneros says that the cause of her fall was slipping from black ice on the ground in the parking lot. While Cisneros did not see or feel any ice beneath her, she says her pants were dampened after her fall and that she did not see a puddle of water in the area she fell. Photographs from Wal-Mart's surveillance footage show Cisneros pulling the truck into the handicap parking spot, but they are inconclusive as to whether the area was icy. The parking spot appears to be free of snow, but is it unclear whether any ice exists on the pavement.

Further, the weather conditions on January 28, 2012 could have produced icy conditions that evening even though Wal-Mart employees stated they had not received any prior complaints relating to the parking lot that day. This possibility, coupled with the fact that Metrosweep salted the parking lot only once that day in the morning, allows for the reasonable inference that black ice existed in the Wal-Mart parking lot at the time of the incident. While there is no direct evidence of the existence of black ice, the circumstantial evidence, viewed in a light most favorable to Cisneros, gives rise to the reasonable inference that black ice caused Cisneros' fall. Thus, there is a genuine issue of material fact regarding the cause of the fall. See Robbins v. Village Crest

Condominium Ass'n, 2013 WL 3942386 (Mich. Ct. App. July 30, 2013).

## 2. Constructive Notice

There is also genuine issue of material fact as to whether Wal-Mart had constructive notice of the parking lot condition. Cisneros does not say that Wal-Mart had actual notice; rather, she asserts that Wal-Mart should have known of the existence of black ice in the parking lot. Wal-Mart says it fulfilled its duty to keep its parking lot safe and clear, while Cisneros argues it is possible that in exercising its reasonable care, Wal-Mart should have known of the black ice. Metrosweep salted the parking lot the morning of January 28, 2012. Cisneros says she did not see or feel any ice in the parking lot. However, Cisneros argues that the weather reports from January 28, together with the lack of inspection of the parking lot that day, should have put Wal-Mart on notice of the potential for icy parking lot conditions throughout the day.

From the record, it is not clear whether black ice existed in the parking lot for an unreasonable amount of time. Thus, it cannot be said whether Wal-Mart had constructive notice of the condition. Summary judgment is therefore inappropriate.

## 3. Open and Obvious

Assuming there was black ice in the parking lot and that Wal-Mart had constructive notice of its dangerous condition, there are material factual issues as to whether the condition was open and obvious. An average person of ordinary intelligence may not have been able to discover the black ice upon casual inspection. In a previous slip and fall case, this Court stated that black ice "by its very nature . . . is not noticeable upon casual inspection." Woodard v. ERP Operating Ltd. P'Ship., 351 F. Supp. 2d 708, 715 (E.D. Mich. 2005). In Woodard, this Court denied the defendant's

motion for summary judgment because there was a genuine dispute of material fact as to whether ice on the sidewalk to an apartment entrance was open and obvious. Id. at 716. Similarly, the Michigan Court of Appeals reversed a trial court's grant of summary disposition based on the open and obvious doctrine because the Court of Appeals found that the black ice the plaintiff fell on "was not immediately noticeable," and therefore, a factual question regarding whether the condition was open and obvious remained for a jury to determine. Id. (citing Kantner v. Ann Arbor Tower Plaza Condominium Ass'n, 2004 WL 2601289, *1 (Mich. App. Nov. 16, 2004)).

Here, it is possible that Cisneros did not observe any ice as she drove into the Wal-Mart parking lot because the black ice could not be noticed upon casual inspection, like the black ice in Woodard and Kantner. The nature of the condition may have prevented it from being an open and obvious danger to an average person of ordinary intelligence, especially if it was dark outside at the time of incident as Cisneros says. The photographs of the parking spot from Wal-Mart's surveillance video are inconclusive on the presence of black ice. Thus, it remains a factual issue whether the ice was open and obvious.

Because there is a question of fact as to whether the black ice was open and obvious, the Court cannot proceed to the "special aspects" analysis under Lugo to determine whether the ice in the Wal-Mart parking lot could be considered "unreasonably dangerous." See Lugo, 464 Mich. at 517.

### V. Conclusion

Genuine issues of material fact exist regarding the condition of the premises,

whether Wal-Mart had constructive notice, and whether the condition was open and obvious, rendering summary judgment inappropriate.  Accordingly, Wal-Mart's motion for summary judgment on these grounds is DENIED.

    SO ORDERED.

                                   S/Avern Cohn
                                  AVERN COHN
                                  UNITED STATES DISTRICT JUDGE

Dated:  September 9, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 9, 2013, by electronic and/or ordinary mail.

                                   S/Sakne Chami
                                  Case Manager, (313) 234-5160